```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/11/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
                                          :
EM LTD. and NML CAPITAL, LTD.,            :
                                          :        06 Civ. 7792 (TPG)
                    Plaintiffs,           :
                                          :
        – against –                       :        **OPINION**
                                          :
THE REPUBLIC OF ARGENTINA and             :
BANCO CENTRAL DE LA REPUBLICA             :
ARGENTINA,                                :
                                          :
                    Defendants.           :
------------------------------------------x
                                          :
VARIOUS ACTIONS                           :        02 Civ. 1773 (TPG)
                                          :        02 Civ. 3804 (TPG)
                                          :        02 Civ. 3808 (TPG)
                                          :        02 Civ. 4124 (TPG)
                                          :        03 Civ. 1680 (TPG)
                                          :        03 Civ. 2507 (TPG)
                                          :        03 Civ. 4693 (TPG)
                                          :        03 Civ. 6268 (TPG)
                                          :        03 Civ. 8120 (TPG)
                                          :        03 Civ. 8845 (TPG)
                                          :        03 Civ. 9538 (TPG)
                                          :        04 Civ. 3314 (TPG)
                                          :        04 Civ. 6137 (TPG)
                                          :        04 Civ. 6594 (TPG)
                                          :        04 Civ. 7504 (TPG)
                                          :        05 Civ. 177 (TPG)
                                          :        05 Civ. 178 (TPG)
                                          :        05 Civ. 2434 (TPG)
                                          :        05 Civ. 2943 (TPG)
                                          :        05 Civ. 3089 (TPG)
                                          :        05 Civ. 3955 (TPG)
                                          :        05 Civ. 4085 (TPG)
                                          :        05 Civ. 4299 (TPG)
                                          :        05 Civ. 4466 (TPG)
                                          :        05 Civ. 5197 (TPG)
                                          :        05 Civ. 6002 (TPG)
                                          :        05 Civ. 6200 (TPG)
                                          :        05 Civ. 6599 (TPG)

|   |                       |
|---|-----------------------|
| : | 05 Civ. 8195 (TPG)    |
| : | 05 Civ. 8687 (TPG)    |
| : | 05 Civ. 10636 (TPG)   |
| : | 06 Civ. 207 (TPG)     |
| : | 06 Civ. 3196 (TPG)    |
| : | 06 Civ. 3197 (TPG)    |
| : | 06 Civ. 3198 (TPG)    |
| : | 06 Civ. 6032 (TPG)    |
| : | 06 Civ. 6466 (TPG)    |
| : | 06 Civ. 7100 (TPG)    |
| : | 07 Civ. 98 (TPG)      |
| : | 07 Civ. 689 (TPG)     |
| : | 07 Civ. 937 (TPG)     |
| : | 07 Civ. 1910 (TPG)    |
| : | 07 Civ. 2690 (TPG)    |
| : | 07 Civ. 2693 (TPG)    |
| : | 07 Civ. 2715 (TPG)    |
| : | 07 Civ. 5807 (TPG)    |
| : | 07 Civ. 6563 (TPG)    |
| : | 07 Civ. 7248 (TPG)    |
| : | 07 Civ. 10656 (TPG)   |
| : | 07 Civ. 10657 (TPG)   |
| : | 07 Civ. 11327 (TPG)   |
| : | 07 Civ. 11382 (TPG)   |
| : | 07 Civ. 11495 (TPG)   |
| : | 07 Civ. 11497 (TPG)   |
| : | 08 Civ. 440 (TPG)     |
| : | 08 Civ. 2541 (TPG)    |
| : | 08 Civ. 3302 (TPG)    |
| : | 08 Civ. 4902 (TPG)    |
| : | 08 Civ. 5436 (TPG)    |
| : | 08 Civ. 6625 (TPG)    |
| : | 08 Civ. 6978 (TPG)    |
| : | 09 Civ. 1707 (TPG)    |
| : | 09 Civ. 1708 (TPG)    |
| : | 09 Civ. 8275 (TPG)    |
| : | 09 Civ. 8299 (TPG)    |
| : | 09 Civ. 8757 (TPG)    |
|   | 09 Civ. 10620 (TPG)   |

----------------------------------------------x

Plaintiffs move to confirm attachment orders entered on January 11, 12, 14, and 19, and February 4, 2010 in the above-captioned cases. Defendants cross-move to vacate all attachment, restraining, and "omnibus" orders issued on those dates and quash all associated writs of execution.

Plaintiffs' motions to confirm are denied and defendants' cross-motion to vacate and quash is granted.

## Background

This action arises from the Republic of Argentina's December 23, 2001 default on its sovereign debt.

On December 30, 2005, plaintiffs EM and NML filed motions seeking pre-judgment attachment and restraining notices with respect to $105 million on deposit in the name of the Central Bank of Argentina ("BCRA") at the Federal Reserve Bank of New York ("FRBNY"). Plaintiffs' theory was that recent executive decrees giving the Republic the authority to use BCRA funds to repay the Republic's debt to the International Monetary Fund had the effect of making the $105 million the property of the Republic, rather than of BCRA. The Part I judge of this court granted the motions.

On January 9, 2006, the parties entered into a stipulation and consent order to the effect that the FRBNY would hold 95 percent of the attached amount pending final resolution of the matter. As a result,

- 3 -

approximately $100 million in BCRA funds has remained frozen at the FRBNY since January 9, 2006.

On January 12, 2006, the undersigned regular judge in the case vacated the attachments and restraints, holding that the executive decrees did not change the ownership status of the funds.  However, the attachment and restraint of the $100 million in BCRA funds at the FRBNY remained in effect pending appeal.

On January 5, 2007, the Court of Appeals affirmed.  EM Ltd. v. Republic of Argentina, 473 F.3d 463 (2d Cir. 2007).  The Supreme Court denied certiorari on October 1, 2007.  The Court of Appeals rejected the arguments of plaintiffs, but discussed extensively plaintiffs' potential argument that BCRA was the alter ego of the Republic.  Id. at 476-80.

In September 2006, while the Court of Appeals proceeding was still pending, plaintiffs EM and NML commenced an action against both the Republic and BCRA, seeking provisional relief with respect to the frozen $100 million on the theory that BCRA is the Republic's alter ego.

On January 11 and 12, 2010, while this court's decision on the 2006 alter ego action was still pending, plaintiffs EM and NML obtained from this court attachment orders, restraining orders, "omnibus" orders, and writs of execution directed to BCRA's property at the FRBNY and at 42 other financial institutions in Manhattan.  These applications were made at least partially in response to a report that acting BCRA Governor

- 4 -

Miguel Angel Pesce had directed Argentine banks to cease conducting
foreign currency transactions through the FRBNY.

On January 12, 14, and 15, 2010, the Aurelius plaintiffs obtained
attachment orders, restraining orders, omnibus orders, and writs of
execution substantially similar to those obtained by EM and NML on
January 11 and 12, 2010.

On January 13, 2010, this court held a hearing on BCRA's
emergency motion of that day to vacate all of the ex parte orders and
writs of execution. The court directed the parties to work out a
stipulation that would keep in place the freeze on the $100 million while
preserving BCRA's ability to conduct business at the FRBNY without risk
of further attachment or restraint. On January 15, 2010, a consent
order to this effect was entered.

On January 14, 2010, Capital Ventures International ("CVI")
obtained a restraining order, an omnibus order, and writs of execution
substantially similar to those obtained earlier by EM and NML. On
January 19, 2010, CVI obtained an attachment order and an additional
omnibus order.

On January 19, 2010, plaintiffs represented by Milberg LLP
obtained an attachment order, a restraining order, an omnibus order,
and writs of execution substantially similar to those obtained earlier by
EM and NML.

On February 4, 2010, plaintiffs represented by Duane Morris LLP obtained an attachment order, an omnibus order, and writs of execution substantially similar to those obtained earlier by EM and NML.

All of the 2010 orders and writs of execution are directed to property of BCRA on the theory that BCRA is the alter ego of the Republic.

On January 19, 2010, EM and NML moved to confirm the attachment orders entered on their behalf on January 11 and 12, 2010.

On January 19, 2010, the Aurelius plaintiffs joined EM and NML's motion to confirm, seeking thereby to confirm the attachment orders entered on behalf of the Aurelius plaintiffs on January 12 and 14, 2010.

On January 21, 2010, the Milberg plaintiffs joined EM and NML's motion to confirm, seeking thereby to confirm the attachment order entered on behalf of the Milberg plaintiffs on January 19, 2010.

On January 28, 2010, Capital Ventures International moved to confirm the attachment order entered on its behalf on January 19, 2010.

On February 11, 2010, the Duane Morris plaintiffs joined EM and NML's motion to confirm, seeking thereby to confirm the attachment order entered on behalf of the Duane Morris plaintiffs on February 4, 2010.

On March 26, 2010, BCRA cross-moved to vacate all of the 2010 attachment, restraining, and omnibus orders and to quash all associated

- 6 -

writs of execution.  On the same date, the Republic joined in BCRA's
cross-motion to vacate.

On April 7, 2010, the court granted EM and NML's motions for
attachment and restraints in the 2006 BCRA alter ego action.  EM Ltd. v.
The Republic of Argentina, 2010 WL 1404119 (S.D.N.Y. Apr. 7, 2010).
An appeal from this decision is now pending in the Second Circuit.

## Discussion

It should be noted initially that none of the attachment or
restraining orders issued in this matter have reached any property
whatsoever except for the approximately $100 million in BCRA assets
frozen at the FRBNY since early 2006.

As to the $100 million, BCRA argues in its initial brief that because
these assets are already frozen, the new orders would be "duplicative"
and "serve no substantial real-life purpose."  However, none of the
plaintiffs other than EM and NML had any orders as to this asset prior to
2010.  Thus, as to these other plaintiffs, the 2010 orders are not
duplicative in any sense and, if confirmed, could serve a substantial
purpose to them.

Further, even as to EM and NML, the existence of earlier orders
does not preclude the court from issuing additional orders on the same
property.  There can be no dispute that, as a matter of law, if
circumstances have changed during the course of litigating earlier
orders, new orders can properly be allowed.  Here, that is precisely the

- 7 -

position of EM and NML, who argue that the issue in the 2006 action is whether BCRA was the alter ego of the Republic as of <u>December 30, 2005</u>, while the issue here is whether BCRA was the alter ego of the Republic as of <u>January 11, 2010</u>.  Certainly much has occurred in the intervening four years, and an alter ego claim as of 2010 may legitimately be considered a new legal theory, entitling plaintiffs to new orders pending resolution of the underlying claim.

Of course, whatever the legal theory, the assets concerned must also be lawfully attachable.  Under the terms of the FSIA, "[t]he property in the United States of a foreign state . . . used for a commercial activity in the United States, shall not be immune from attachment . . . ."  28 U.S.C. § 1610(a).  Considering that this court found in resolving the 2006 action that BCRA was the alter ego of the Republic, and considering that the FRBNY account is indisputably in the United States, the parties properly focus on the commercial activity question.

As noted above, the $100 million at issue was first attached on December 30, 2005, and has been frozen by stipulation since January 9, 2006.  Therefore, the relevant inquiries here are (1) whether the appropriate date for the commercial activity analysis is the date of the original orders or of the present orders; and (2) if the latter, whether assets frozen in a bank account may be considered "used for a commercial activity" for purposes of the FSIA.

- 8 -

Plaintiffs at first appear to concede that the proper date for the commercial activity analysis is the date of the recent orders in the pending action. Plaintiffs note in their opening brief that the present motion to confirm "is based on the Central Bank's current alter-ego status and current commercial use of the BCRA Accounts," and is separate from plaintiffs' 2006 motion involving "the Central Bank's alter-ego status as of December 30, 2005 and commercial use of the frozen $100 million on that date" (emphasis added). However, in the reply brief plaintiffs change their position, arguing that the proper date for the commercial activity analysis is the date on which the property was originally attached. Plaintiffs suggest that if this were not the case, the so-called "me too" orders routinely issued by courts following an initial attachment would be invalid from the start because at the time such subsequent orders are issued, the target property is already frozen.

Nonetheless, the Second Circuit has plainly decided this issue in defendants' favor, declaring that in order for Section 1610 to apply, the property that is subject to attachment and execution "must have been 'used for a commercial activity' at the time the writ of attachment or execution is issued." Aurelius Capital Partners, LP v. Republic of Argentina, 584 F.3d 120, 130 (2d Cir. 2009) (emphasis in original).[1]

---

[1] The regular issuance of "me too" orders might appear to contravene this rule, but such orders are issued pursuant to an equitable rule of reason. "Me too" orders following the original attachment by a few days or weeks cannot of course be compared to orders such as those at issue here, which followed four years later.

Therefore, the court holds that the relevant date for the commercial activity analysis here is January 11, 2010.

Plaintiffs next argue that the frozen $100 million was being used for commercial activity even as of January 11, 2010. Plaintiffs contend that the use of property to provide security for potential liability in a civil suit, as here, is the type of commercial activity in which any private actor can engage and is therefore commercial activity for FSIA purposes. See Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992) ("[W]hen a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA"); see also Af-Cap Inc. v. Republic of Congo, 383 F.3d 361, 369-71 (5th Cir. 2004) (stating that the determination of commercial use under Section 1610(a) requires a "holistic approach" cognizant of "the totality of the circumstances surrounding the property").

Nevertheless, it is difficult to see how a sum of money frozen by stipulation and thereby entirely unavailable to defendants for more than four years has been "used" for any activity at all, commercial or not. The stipulation in fact requires that defendants not use the funds during the pendency of the action. Further, plaintiffs' argument would appear to be precluded by the express terms of the parties' stipulation agreement, which states that "no party may rely upon this Stipulation and Consent Order in support of an argument . . . about the use or ownership of the

Attached Property." Finally, to hold here that frozen assets were "used for a commercial activity" for FSIA purposes would be inconsistent with the Second Circuit's recent holding in Aurelius, 584 F.3d at 130-31. There, bank deposits and securities were frozen by order of this court at the moment they were transferred to government control. The Second Circuit reversed this court's confirmation of the attachment orders, holding that because the assets were frozen at the moment of transfer, "neither the [Argentine Social Security] Administration nor the Republic had the opportunity to use the funds for any commercial activity whatsoever." Id. at 131. Likewise here, because the FRBNY funds have been frozen for the past four years, neither BCRA nor the Republic has had the opportunity to use the funds for commercial activity throughout that time, including at or around the period of the instant attachments in January and early February 2010.

The court therefore holds that the $100 million in BCRA funds frozen at the FRBNY, which are the only assets reached by the orders in these actions, were not used for commercial activity at the time of the 2010 orders and therefore, under the express terms of the FSIA, are not subject to process. The parties make further arguments, but because the dispositive issue requires the vacating of all of the 2010 orders, as outlined above, it is unnecessary to reach them.

Plaintiffs' motions to confirm the various orders are denied.

Defendants' cross-motion to vacate is granted.

SO ORDERED.

Dated: New York, New York
June 11, 2010

Thomas P. Griesa
U.S.D.J.